UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AMERICAN BIOPHYSICS CORP., Plaintiff, | : | |
| v. | : | C.A. No. 06-_________ |
| | : | CA 06 142 |
| MIDGEMASTER LTD., LLC. and MICHAEL QUATTLEBAUM, Defendants. | : | |

**COMPLAINT**

PARTIES

1. Plaintiff American Biophysics Corp. ("ABC") is a Delaware corporation with its principal place of business in North Kingstown, Rhode Island.

2. Upon information and belief, Defendant Midgemaster Ltd., LLC ("Midgemaster") is a South Carolina corporation with its principal place of business in Charleston, South Carolina.

3. Upon information and belief, Defendant Michael Quattlebaum ("Quattlebaum") is a resident of Charleston, South Carolina.

JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Further, Midgemaster and Quattlebaum have consented to the jurisdiction of this Court pursuant to the forum selection clauses in the contractual agreements at issue in this action.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to ABC's claims occurred in this District. Further, Midgemaster and Quattlebaum have specifically consented to venue in this District.

FACTS COMMON TO ALL COUNTS

6. ABC is a manufacturer of insect mitigation systems with customers throughout the world.

7. On or about October 1, 2003, ABC and Midgemaster executed an Exclusive Distributorship Agreement ("Agreement"), which prescribed the terms and conditions under which Midgemaster acted as a distributor of ABC's products. A true and accurate copy of the Agreement is attached at Exhibit A.

8. Pursuant to the Agreement, ABC granted Midgemaster exclusive rights to distribute, promote and sell ABC's products in the United Kingdom and the Republic of Ireland. Section 10(b) of the Agreement prescribed minimum dollar amounts of purchases of ABC's products that Midgemaster was required to generate during each contract year. For example, during the first contract year spanning from October 1, 2003 to September 30, 2004, Midgemaster was obligated to generate at least $750,000.00 worth of purchases.

9. On or about May 4, 2004, Quattlebaum executed an Individual Credit Guaranty ("Guaranty") in order to induce ABC to extend credit to Midgemaster. Quattlebaum agreed unconditionally to guarantee the prompt payment of any and all of Midgemaster's debts and obligations (existing or future) owed to ABC. A true and accurate copy of the Guaranty is attached at Exhibit B.

10. On or about September 15, 2004, ABC and Midgemaster amended the Agreement to, *inter alia*, expand the geographic scope of Midgemaster's rights to distribute, promote and sell ABC's products. ABC granted Midgemaster (a) exclusive distributorship rights in the United Kingdom, Republic of Ireland, Portugal, Sweden, Finland, Norway and Denmark and (b) non-exclusive distributorship rights in Spain and Dubai. The parties also amended Section 10(b) of the Agreement to increase the minimum amounts of purchases that Midgemaster was obligated to generate during each contract year. A true and accurate copy of the Amendment to the Agreement is attached at Exhibit C.

11. Despite several demands by ABC, Midgemaster has repeatedly failed to pay ABC for products ordered and received pursuant to the Agreement, as amended. Midgemaster's indebtedness to ABC under unpaid invoices totals $607,250.00. True and accurate copies of the unpaid invoices are attached at Exhibit D.

12. During the contract year between October 1, 2004 and September 30, 2005, Midgemaster failed to generate at least $1,350,000.00 of purchases from ABC as required under Section 10(b) of the Agreement, as amended.

13. ABC provided several notices demanding Midgemaster to cure its material breaches of the Agreement, as amended, but Midgemaster failed to do so.

14. As a result of Midgemaster's material breaches, ABC sent Midgemaster a written notice dated March 17, 2006, which exercised ABC's right to terminate Midgemaster's distribution rights pursuant to Section 10 of the Agreement, as amended.

COUNT I
(Breach of Contract Against Midgemaster)

15. ABC realleges and incorporates herein its allegations in paragraphs 1 - 14.

16. ABC sold and delivered products to Midgemaster in compliance with the Agreement, as amended.

17. Midgemaster breached the Agreement, as amended, by failing to pay invoices totaling $607,250.00.

18. Midgemaster breached the Agreement, as amended, by failing to generate the required minimum level of purchases required during the contract year spanning October 1, 2004 to September 30, 2005.

19. ABC has suffered damages as a result of Midgemaster's contractual breaches.

WHEREFORE, ABC prays for a judgment against Midgemaster in the amount sufficient to compensate ABC for its damages, including but not limited to the payment of the outstanding

invoices totaling $607,250.00, plus interest, costs and reasonable attorneys' fees pursuant to R.I. Gen. Laws § 9-1-45.

COUNT II
(Book Account Against Midgemaster)

20. ABC realleges and incorporates herein its allegations in paragraphs 1 - 19.

21. Midgemaster is indebted to ABC on book account in the amount of $607,250.00 for goods that were sold and delivered.

WHEREFORE, ABC demands judgment against Midgemaster in the amount of $607,250.00, plus interest, costs and reasonable attorneys' fees pursuant to R.I. Gen. Laws § 9-1-45.

COUNT III
(Quantum Meruit and Unjust Enrichment Against Midgemaster)

22. Plaintiff realleges paragraphs 1 - 21 above.

23. Under the circumstances, as set forth above, it would be inequitable for Midgemaster to retain the benefit of ABC's products without payment of the value thereof in the principal amount of $607,250.00.

24. Therefore, Midgemaster owes ABC $607,250.00 under Quantum Meruit and Unjust Enrichment theories.

WHEREFORE, ABC prays for a judgment against Midgemaster in the amount sufficient to compensate ABC for its damages, including but not limited to the payment of the outstanding invoices totaling $607,250.00, plus interest, costs and reasonable attorneys' fees pursuant to R.I. Gen. Laws § 9-1-45.

COUNT IV
(Breach of Contract Against Quattlebaum)

25. ABC realleges and incorporates herein its allegations in paragraphs 1 - 24.

26. Quattlebaum has failed to pay ABC under the Guaranty for all amounts due and owing as a result of Midgemaster's breaches of the Agreement, as amended.

27. ABC has suffered damages as a result of Quattlebaum's contractual breaches.

WHEREFORE, ABC demands judgment against Quattlebaum in the amount sufficient to compensate ABC for all obligations and indebtedness guaranteed by Quattlebaum, including but not limited to the payment of the outstanding invoices equaling $607,250.00, plus interest, costs and reasonable attorneys' fees pursuant to R.I. Gen. Laws § 9-1-45.

Plaintiff,
AMERICAN BIOPHYSICS CORP.,
By its Attorneys,

Jeffrey S. Brenner (#4369)
Steven M. Richard (#4403)
Nixon Peabody LLP
One Citizens Plaza
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030

Dated: March 27, 2006